*1067 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Works of Art, Inc. y Joel Scalley (peticionarios) mediante escrito de apelación y solicitan que revoquemos la determinación del Tribunal de Primera Instancia, Sala de Ponce (T.P.I.) emitida el 12 de marzo de 2008 y notificada el 2 de abril siguiente. Mediante la misma, el TPI les ordenó pagar a Aitza Rodríguez (recurrida) la cantidad de $30,000.00 por incumplimiento de contrato más $5,500.00 por concepto de angustias mentales como resultado de dicho incumplimiento. [1]
I
Los hechos que originan la presentación del recurso son los siguientes:
El 10 de enero de 2005, la recurrida suscribió un contrato de obras con la compañía constructora Works of Art, Inc. (Works of Art) para la construcción de una piscina, un spa y un “wet bar” a un costo de $59,900.00. La piscina a construirse era una muy similar a otra que la recurrida vio en una revista en la que se anunciaba Works of Art.
Tras culminar la construcción de la piscina y habiéndosele pagado a Works of Art la cantidad de $49,000.00, la Dra. Rodríguez le manifestó a los peticionarios que estaba inconforme con la labor realizada por entender que la construcción realizada tenía ciertos defectos.
Luego de varios intentos para que se corrigieran los mismos, el 28 de junio de 2008, la recurrida presentó una demanda contra Works of Art por incumplimiento de contrato, defectos de construcción y daños y perjuicios. La acción presentada se relacionaba, pero sin limitarse a, los siguientes defectos: la deficiencia del *1068 empañetado en las paredes y piso de la piscina, áreas sin empañetar, grietas y filtración en la pared del “wet bar”. Oportunamente, los peticionarios contestaron la demanda y negaron las alegaciones.
Tras un intenso descubrimiento de prueba, se celebró el juicio en su fondo. El mismo concluyó con una inspección ocular de la piscina en controversia.
Así las cosas, el 12 de marzo de 2008, notificada el 2 de abril siguiente, el TPI emitió su sentencia. Como ya indicamos, mediante la misma ordenó pagar a los apelados la cantidad de $30,000.00 por incumplimiento de contrato más $5,500.00 por concepto de angustias mentales como resultado de dicho incumplimiento.
En desacuerdo, el 14 de abril de 2008, Works of Art presentó una “Moción Solicitando Determinaciones de Hechos Adicionales y Reconsideración”. El 9 de mayo siguiente, el TPI declaró sin lugar la referida moción.
Inconforme, los peticionarios acuden ante nos mediante recurso de apelación y señala que el TPI cometió los siguientes errores:

“Erró el Tribunal de Primera Instancia al imponer una condena a la parte demandada cuando la demandante no actuó conforme al principio de buena fe contractual procediendo a efectuar cambios y mejoras en la obra sin previamente comunicarse con la parte demandada, ni dar oportunidad a ésta de corregir cualquier deficiencia.

Erró el- Tribunal de Primera Instancia al dejar de exponer que la reclamación del Sr. José M. Contreras fue desestimada por falta de legitimación activa (no tener interés en el contrato); sin embargo, en sus determinaciones de hechos, se refiere a este último como co-demandante.

Erró el tribunal de Primera Instancia al dejar de expresar que desestimó la demanda con perjuicio a favor de fulana de tal y la Sociedad Legal de Gananciales compuesta con Joey Scalley luego de que nunca fueran emplazados y traídos al caso. ”

Hubo craso error del Tribunal de Primera Instancia en su interpretación de la prueba al determinar los siguientes hechos como probados, a saber:

“2. La parte demandante le ha pagado la cantidad de $49,000.00 para dicha construcción. Sin embargo, la parte demandada incumplió con su obligación contractual al no construir la piscina en el término pactado de 45 días y al no hacerlo con la diligencia y exigencias que requieren la profesión de contratista.

3. Works of Arts, en el desempeño de su profesión, dejó los siguientes defectos en la construcción de la piscina:

• Deficiencia en el empañetado de las paredes y piso de la piscina

• Grietas y filtración en la pared del área del “Wet Bar
• Los Jets surtidores del jacuzzi sobresalen de la pared, ya que el tubo quedó muy largo y el cubrefalta sobresale de la pared (5 sutidores)
• La descarga para el “back wash” está incorrectamente realizada, por lo que requiere una reinstalación nueva.

5. Ante los requerimientos de la parte demandante, la parte demandada trató de reparar los defectos 
*1069
infructuosamente.

6. Hubo enfrentamientos entre el co-demandante José Contreras y el co-demandado Joey Scalley que los llevó a radicar acusaciones ante un tribunal de justicia. Volvió a solicitarle al demandado que corrigiera los defectos en la piscina.

8. El trabajo en la piscina fue realizado deforma defectuosa.

Erró el Tribunal de Primera Instancia al condenar a la parte demandada en su totalidad sin hacer distinción entre Works of Arts, Inc., corporación con la que se contrató la obra en cuestión, y el Sr. Joey Scalley, Presidente de la Corporación. ”

II
-A-
La Regla 43 de Procedimiento Civil
La Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.1, dispone que “[sjegún se usa en estas reglas, el término “sentencia” incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse”. “Dicho de otra forma, una sentencia ‘pone fin a la controversia existente entre las partes mediante una adjudicación final'.” Johnson & Johnson v. Mun. de San Juan, res. el 19 de diciembre de 2007, 172 D.P.R. _ (2007), 2008 JTS 17. Véase también García v. Padró, 165 D.P.R. 324 (2005). Igualmente, nuestro más alto foro ha expresado que “una sentencia es final cuando resuelve definitivamente el caso en sus méritos en forma tal que sólo queda pendiente la ejecución de la sentencia. ” Johnson & Johnson v. Mun. de San Juan, supra. Véase también Feliberty v. Soc. de Gananciales, 147 D.P.R. 834 (1999).
De otra parte, “una resolución” es un dictamen que pone fin a un incidente dentro del proceso judicial.” [Subrayado omitido]. Johnson & Johnson v. Mun. de San Juan, supra. En cuanto a esta distinción, el autor Hiram A. Sánchez Martínez nos indica:
“Como regla general, y salvo que otra cosa se disponga específicamente por ley, todo dictamen emitido por cualquier juez del Tribunal de Primera Instancia en un proceso de naturaleza civil, que no sea una sentencia final en un caso originado ante dicho foro, es revisable ante el Tribunal de Circuito de Apelaciones mediante certiorari. Esto incluye tanto las resoluciones interlocutorias como las resoluciones postsentencia. Las órdenes que no formen parte de una sentencia final, emitidas antes o después de ésta, se consideran igualmente resoluciones interlocutorias o postsentencia.” [Enfasis en el texto]. Sánchez Martínez, H.A. Práctica Jurídica de Puerto Rico-Derecho Procesal Apelativo, Lexis-Nexis of Puerto Rico, Inc., Hato Rey, Puerto Rico, 2001, a la pág. 397.
“Sabido es que el nombre no hace la cosa, y por ello es necesario examinar la determinación del foro de instancia para asegurarnos si ésta constituye una resolución revisable mediante certiorari o si se trata de una sentencia, la cual es apelable.” Johnson & Johnson v. Mun. de San Juan, supra. Véase también García v. Padró, supra; U.S. Fire Insurance Co. v. A.E.E., 151 D.P.R. 962 (2000); Román, et al. v. K-Mart Corp., et al, 151 D.P.R. 731 (2000).
Relacionado a esto, la Regla 38.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite la celebración de juicios por separado “de cualesquiera demandas, demandas contra coparte, reconvenciones, demandas contra *1070 tercero, o de cualquiera cuestiones litigiosas independientes, y podrá dictar sentencia de acuerdo con lo dispuesto en la Regla [43.5].” Véase, Urrutia de Basora, Cándida R., Negrón Portillo, Luis M., Reglas de Procedimiento Civil de Puerto Rico-Preguntas y Respuestas, segunda edición, Ediciones Situm, Inc., San Juan, Puerto Rico, 2005, a la pág. 184. La referida Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a su vez dispone:

“Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda,[...], el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia.

Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que a ella respecta los términos dispuestos en las reglas 47, 48 y 53.

En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones o los derechos' y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones y los derechos y obligaciones de las partes. ”
En consecuencia, un dictamen denominado sentencia que no constituye una adjudicación final bajo la Regla 43.5 de Procedimiento Civil, supra, es en realidad una resolución interlocutoria. First Federal Savings Bank v. Nazario González, 138 D.P.R. 872 (1995). El recurso adecuado para la revisión de una resolución interlocutoria es el de Certiorari.
-B-
Teorí a general de los contratos
Sabido es que en Puerto Rico rige el principio de libertad de contratación, reconociéndose así la autonomía de la voluntad de los contratantes. De Jesús González v. A.C., 148 D.P.R. 255, 263 (1999). Dicho principio es recogido en el Artículo 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3372, el cual dispone que las partes contratantes puedan establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que las mismas no sean contrarias a las leyes, a la moral ni al oi'den público.
Una vez establecidas las cláusulas y condiciones del acuerdo, se entenderá perfeccionado el contrato por el consentimiento entre las partes y, desde ese momento, cada una de ellas vendrá obligada no sólo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. see. 3375; S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713 (2001). Esa obligación de cumplir con lo pactado se funda en el principio de la buena fe, la cual exige no defraudar la confianza que otro ha puesto en una promesa o conducta. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 852 (1991) (citando a L. Diez-Picazo, Fundamentos de Derecho Civil Patrimonial, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, Cap. IV, a la pág. 99).
Los contratos conforme a derecho tienen fuerza de ley entre las partes, las cuales tienen que cumplir con lo acordado siempre y cuando no se viole la ley, la moral ni el orden público. S.L.G. Irizarry v. S.L.G. García, supra, a la pág. 725.
Algunos contratos requerirán interpretación para determinar la naturaleza de la prestación a la que se obligó *1071 cada parte. S.L.G. v. S.L.G., supra, a la pág. 726. Al interpretar un contrato, el Artículo 1233 del Código Civil, 31 L.P.R.A. see. 3471, establece que cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se utilizará el sentido literal de sus cláusulas. Trinidad García v. Chade, 153 D.P.R. 280, 289 (2001).
-C-
E1 Contrato de Obras y Servicios
El contrato de arrendamiento de obras está recogido en el Artículo 1434 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4013, donde se dispone que en “el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra o a prestar un servicio por precio cierto.”
El Tribunal Supremo ha definido el contrato de arrendamiento de obras “como esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos... el contrato de obra es uno de carácter consensual, bilateral, y oneroso cuyos elementos característicos son la obra a realizarse y el precio...”. Master Concrete Corp. v. Fraya, S.E., 152 D.P.R. 616, 623-624, (2000); Constructora Bauza v. García López, 129 D.P.R. 579 (1991); Empresas Capote, Inc. v. Tribunal Superior, 103 D.P.R. 765 (1975).
Las obligaciones de las partes en este tipo de contrato son las siguientes: el dueño de la obra tiene la obligación de pagar el precio de ésta en la forma, cuantía y tiempo convenido. Master Concrete Corp. v. Fraya, S.E., supra. [2] El contratista por su parte tiene la obligación de realizar y entregar la obra según lo pactado. Master Concrete Corp. v. Fraya, S.E., supra, citando con autoridad a Del Arco y Pons, Derecho de la Construcción, Ed. Hesperia, 1980, pág. 20.
Nuestro más Alto Foro ha puntualizado que “[s]i el contratista incumple con su deber, el dueño tiene el derecho a pedir la resolución del contrato, aun hecha la obra, si resulta ser tan imperfecta que el dueño se ve impedido de usarla para elfin perseguido”. Master Concrete Corp. v. Fraya, S.E., supra, págs. 624-625.
Conforme a los Artículos 1054 y 1210 del Código Civil, 31 L.P.R.A. sees. 3018 y 3375, una vez que se perfecciona un contrato de arrendamiento de obras, las partes contratantes vienen obligadas con lo expresamente pactado y, de incurrir en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responden por los daños y perjuicios causados. Master Concrete Corp. v. Fraya, S.E., supra, págs. 624-625.
Así pues, bajo la normativa de las obligaciones, quedan sujetos a la indemnización por los daños y perjuicios que causen, aquellos que en el incumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren las obligaciones contraídas. Artículo 1054, 31 L.P.R.A. see. 3018. La indemnización por daños y perjuicios, como resultado del incumplimiento contractual, “comprende no sólo el valor de la pérdida que [se] haya sufrido, sino también el de la ganancia que [se] haya dejado de obtener... ”. Artículo 1059, 31 L.P.R.A. see. 3023.
-D-
Apreciación de la prueba
Es norma conocida que la apreciación de la prueba realizada por los Tribunales de Primera Instancia debe ser objeto de deferencia por los tribunales apelativos. Ramos v. Walmart, 165 D.P.R. 510 (2005). Corresponde al tribunal sentenciador aquilatar la prueba testifical ofrecida y dirimir su credibilidad. Trinidad v. Chade, 153 D.P.R. 280, 291 (2001).
En ausencia de error, pasión, prejuicio y parcialidad, los tribunales apelativos no debemos intervenir con las *1072 determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por el Tribunal de Primera de Instancia. Arguello López v. López Peña, 155 D.P.R. 62, 78 (2001).
Los tribunales apelativos no debemos descartar arbitrariamente ni sustituir el criterio del tribunal de instancia por el nuestro, salvo cuando de la prueba admitida no exista base suficiente para apoyar tales determinaciones. Ramos v. Walmart, supra; Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 98-99 (2000).
La norma descansa en el hecho de que es el juzgador de los hechos quien observa el comportamiento de los testigos, lo cual constituye un aspecto de vital importancia al momento de adjudicar credibilidad. Vélez v. Srio de Justicia, 115 D.P.R. 533, 545 (1984); Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).
-A-
Antes de entrar en la discusión del presente recurso es menester aclarar lo siguiente: En este caso, además de una demanda, existe una reconvención. Sin embargo, el TPI en su sentencia del 12 de marzo de 2008 no adjudicó la reconvención instada por los peticionarios. Por lo tanto, no estamos ante una sentencia final que ha puesto fin a todas las controversias en el pleito.
No obstante, tampoco estamos ante una sentencia parcial final. Recordemos que conforme la Regla 43.5 de Procedimiento Civil, supra, el tribunal puede dictar una sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia. De lo contrario, nos encontramos ante una resolución interlocutoria.
Toda vez que el dictamen emitido por el TPI no hizo mención de lo anterior, tampoco puede ser considerado como una sentencia parcial.
Por lo tanto, nos encontramos ante una resolución, revisable por este Tribunal mediante recurso de Certiorari, por lo que como tal, acogemos el recurso.
-B-
Por estar íntimamente relacionados, procederemos a discutir en conjunto el primer y cuarto error.
En éstos, los peticionarios nos señalan que erró el TPI al imponerles una “condena” cuando la recurrida no actuó conforme al principio de buena fe contractual procediendo a efectuar cambios y mejoras en la obra sin previamente haberse comunicado con éstos. Ello sin que pudiera otorgársele la oportunidad de corregir cualquier deficiencia.
De igual manera, los peticionarios alegan que erró el TPI al determinar que se probaron varios defectos estructurales en la piscina.
Del expediente ante nuestra consideración surge que, contrario a lo expresado por los peticionarios, la recurrida les concedió varias oportunidades para corregir los defectos de la piscina. Así surge claramente de la transcripción del juicio sometida por las partes. Veamos:

“Ledo. Padro Marina

P: ¿Cuántas oportunidades se le dieron al señor Scalley para que pudiera corregir los defectos?

*1073
R: Múltiples.

Hon. Juez

Bien, doctora, ¿alguna otra expresión que usted le quiera manifestar al tribunal?

Testigo

Pues lo único que yo quiero decir es que yo le di a, al señor Scalley las oportunidades, nunca tuve ninguna hostilidad contra el, nunca le falle en los pagos, siempre estuve al tiempo y no recibí de él lo que esperaba. ”

Páginas 180-181 de la transcripción.
Como mencionáramos con anterioridad, se ha resuelto que el Artículo 1077 del Código Civil, supra, establece una condición resolutoria tácita en todo contrato bilateral que opera ex propio vigore. En consecuencia, si uno de los contratantes incumple, el otro puede darlo por resuelto sin necesidad de que un tribunal así lo declare. Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983). Este principio general en materia de contratos, denominado como “exceptio non adimpleti contractus”, constituye una defensa oponible a la parte que habiendo incurrido en incumplimiento exige, no obstante, el cumplimiento del contrato.
Por lo tanto, y tomando en cuenta que los peticionarios incumplieron el contrato, la recurrida estaba en su derecho de contratar a otra persona que corrigiera las deficiencias de la piscina.
Ahora bien, en relación con los defectos habidos en la piscina que encontró probado el TPI, es menester señalar que la recurrida presentó prueba tanto testimonial como pericial de los mismos. De igual manera, los peticionarios tuvieron oportunidad de presentar la suya. A dicha prueba, el TPI le impartió la credibilidad que entendió apropiada y necesaria. Entendemos que las determinaciones y la apreciación de la prueba hecha por el referido foro son razonables y fundamentalmente correctas.
Por lo tanto, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, nos vemos imposibilitados de intervenir con ellas. Arguello López v. López Peña, supra.
-C-
Por último, y en relación con los demás errores planteados por los peticionarios, es necesario referirnos a varios extremos.
Del expediente ante nuestra consideración no se desprende que la Sociedad Legal de Gananciales haya sido emplazada, o si de haberse emplazado, la misma contestó. Tampoco se estableció si el presidente de Works of Arts respondía o no en su capacidad personal. Estos son aspectos que ameritan clarificarse y resolverse, puesto que ello incide sobre el alcance y efectividad de la resolución dictada.
De igual manera, se recordará que en la resolución recurrida, el TPI no dispuso nada en cuanto a la reconvención presentada por los peticionarios.
*1074 Por lo tanto, procede que se devuelva el caso al TPI con el fin de que se atiendan y se especifiquen estos extremos y en particular a quienes se refiere el foro de instancia cuando señala en su sentencia:

“[L]a parte demandada reembolsará la cantidad de $30,000.00 a la parte demandante por las reparaciones realizadas a la piscina. La parte demandada pagará la cantidad de $5,500.00 por las angustias mentales causadas a la parte demandante como consecuencia del incumplimiento. ”

Además, deberá adjudicarse la reconvención presentada en el caso.
IV
Por lo fundamentos antes expuestos, se expide el auto solicitado y se modifica la resolución recurrida. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que se especifique si el señor Scalley responde en su carácter personal ante la recurrida y se adjudique la reconvención presentada.
Así modificada, se confirma en lo demás, principalmente en cuanto a la responsabilidad y el monto impuesto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 56

1. Por las razones que más adelante expondremos, el presente recurso se acoge como uno de Certiorari.

2. Citando con autoridad a Albaladejo, Derecho Civil II, Derecho de Obligaciones, Vol. II, Los contratos en particular y las obligaciones no contractuales, lOma. ed., 1997, Bosch, Barcelona, págs. 286 y siguientes.